## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO.  15-cv-61983-JIC

JOSHUA TARKOFF;
on behalf of himself and all
others similarly situated,

       Plaintiff,

v.

STUDENT AID CENTER, INC.,

       Defendant.

_____/

## TARKOFF'S OPPOSITION TO SAC'S MOTION TO DISMISS

### I.   INTRODUCTION

Plaintiff Joshua Tarkoff ("Tarkoff") brought this action on behalf of himself and others similarly situated, arising from Student Aid Center, Inc.'s ("SAC") use of unsolicited telephone calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") to promote its student loan consolidation and forgiveness services.

SAC now seeks, pursuant to Federal Rule of Civil Procedure 12(b)(6), an order dismissing and striking Tarkoff's Complaint or, in the alternative, for a more definitive statement (the "Motion"). (D.E. 14).  In support of its Motion, SAC raises various unconvincing arguments.  SAC contends Tarkoff has failed to adequately allege SAC's use of an automatic telephone dialing system, that Tarkoff was charged for any of SAC's calls, and further that Tarkoff has failed to establish the basis for any claims regarding the number of potential class members.  SAC likewise contends Tarkoff's class definition is not ascertainable.  In the alternative, SAC requests Tarkoff be ordered to provide a more definitive statement because the Complaint does not allow SAC to reasonably prepare a response.

Each of these grounds is both unpersuasive and unsuccessful as a basis for dismissal.

First, Tarkoff – in layman's terms - has alleged the "prolonged delay" he observed in the answering service recording, leading him to believe that automated equipment was involved in SAC's unwanted calls. This fact, combined with Tarkoff's review of the SAC website and SAC's admission there of the use of "Robo or Auto Dialers" gives rise to a plausible inference that the calls were made using an automatic telephone dialing system. There is simply no need – and no way at this stage – for Tarkoff to allege the serial number, model and operating specifications of each component of SAC's automatic telephone dialing systems.

Second, Tarkoff is not required to allege that he was charged for any of the subject telephone calls in order to state a claim for relief under the TCPA. The statute itself and the case law interpreting it are clear that Tarkoff's allegations regarding being a called party are enough.

Third, Tarkoff has set forth as many facts as are now available to him regarding the number of putative class members, and based on these allegations, it is clear there are a voluminous number of individuals that received the calls at issue, and thus, that Rule 23's numerosity requirement is satisfied. That Tarkoff does not know the exact number of class members at this early stage of the litigation is both unremarkable and unconvincing as a basis for dismissal.

Fourth, the ascertainability question is simply not appropriate at this stage of the proceedings, and is best resolved at the class certification stage.

Finally, there is no reason for Tarkoff to provide a more definitive statement. Tarkoff has identified SAC's role in the illegal conduct, provided his phone number, the phone number used by SAC for the illegal conduct, discussed the lack of consent, established the type ("click and pause") and content (peddling of SAC services) of the calls and voicemails received. In fact, Tarkoff has provided SAC's own website to show that there is a plausible inference of autodialer use, based on SAC's own admission that it uses "Robo or Auto Dialer Calls." (D.E. 1-1). Indeed, Courts have routinely found similar allegations do not warrant a more definite statement.

SAC's motion to dismiss, strike and/or for a more definite statement should be denied in its entirety.

We pause briefly to note SAC's quite cynical and feigned righteously-indignant comments about this litigation.  In introducing its Motion, SAC seeks to characterize this case (and the rise in consumer class actions brought under the TCPA) as nothing more than a "nuisance lawsuit" and a "fee generating tool for class action plaintiff's counsel."  (D.E. 14 at 2).  In so doing, SAC overlooks what the Federal Communications Commission has called "the massive growth in use of wireless devices by consumers since the TCPA was enacted" which "serves only to increase the number of wireless consumers potentially impacted by the use of autodialers, and thus, the governmental interest in protecting consumers from the costs and privacy intrusions of unwanted voice calls and text messages." *See* July 10, 2015 FCC Declaratory Ruling and Order, n. 401. (citing *Implementation of Section 6002(B) of the Omnibus Budget Reconciliation Act of 1993 Annual Report and Analysis of Competitive Market Conditions with Respect to Commercial Mobile Services*, First Report, 10 FCC Rcd 8844 (1995); *Annual Report and Analysis of Competitive Market Conditions in Respect to Mobile Wireless, Including Commercial Mobile Service*, WT No. 11-186, Sixteenth Report, 28 FCC Rcd. 3700 (2013)).

Yet consumers are fighting back. As the FCC's July 20, 2015 Declaratory Ruling and Order reports:  "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission. The Telephone Consumer Protection Act (TCPA) and our rules empower consumers to decide which robocalls and text messages they receive, with heightened protection to wireless consumers, for whom robocalls can be costly and particularly intrusive." *See Id.* at p. 4; n. 5. (disclosing that in 2013-2014 the FCC received 5,000 to 6,000 complaints per month and the FTC received a whopping 200,000 consumer complaints per month "about illegal robocalls.")

And SAC, which is currently the focus of state Attorney General investigations for its abusive tactics directed at consumers, is hardly the victim here.  *See generally* Christina Veiga, *Student*

*Debt Relief Comes with Price, and Doral Company under Scrutiny,* The Miami Herald, October 19, 2015. (noting that SAC has been the target of "hundreds of consumer complaints" and a "deceptive practices lawsuit by the Minnesota Attorney General and discussing how the Florida Attorney General is currently "reviewing [consumer] complaints [over SAC's business practices] to determine if there are any violations of [FDUTPA].").

The same voices that form the chorus of complaints against SAC, whose letters fill the annals of the Better Business Bureau and those of our governmental consumer financial protection advocates from Minnesota to Florida, are part of the class Tarkoff seeks to represent here. SAC's Motion should be denied.

## II.   ARGUMENT

### 1.   Tarkoff's Complaint Should not be Dismissed Pursuant to Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion to dismiss is to test the facial sufficiency of the complaint. The rule permits dismissal only if the complaint fails to state a claim upon which relief can be granted.  The rule must be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint survives a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual]

allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and that "a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

Tarkoff's allegations are detailed and far exceed federal pleading requirements. Nevertheless, in a plain delaying tactic, SAC has launched a reflexive attack on the sufficiency of Tarkoff's claims pursuant to Rule 12(b)(6). Each argument, addressed below, misses the mark entirely. SAC's Motion should be denied in its entirety.

### a. Plaintiff has Sufficiently Alleged Facts Sufficent To Establish the Use of an Automatic Telephone Dialing System ("ATDS").

SAC argues that Tarkoff has employed conclusory allegations regarding the use of an ATDS, without alleging any facts to support that allegation. However, a simple reading of the Complaint shows that Tarkoff has more than adequately plead facts demonstrating SAC's use of an ATDS.

Because it is nearly impossible for a plaintiff to know the technical details of the equipment used by a defendant to make a call prior to discovery, a plaintiff avoids dismissal by alleging facts about the circumstances surrounding the call sufficient to create a plausible inference that the call was made using an ATDS.

It is unreasonable to require a plaintiff in a TCPA complaint, without the benefit of discovery, to elaborate on the specific technical details of a defendant's alleged ATDS, such as what type of machines were used to make a call or how those machines functioned. *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. 2012). It is not unreasonable, however, to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were pre-recorded or delivered via the ATDS. *Id.*

Tarkoff has alleged two principal facts to support the plausible inference that the calls he received were made using an ATDS.

First, Tarkoff referenced the "prolonged delay" between the time the answering service begins recording and the time a voice is heard on the line. Compl. at ¶ 23 ("Further, SAC's phone messages received appear to [be] delivered via an Auto Dialer because of the prolonged delay between the time the voice messaging service begins recording and the time a voice is heard on the line.").

Second, Tarkoff referenced SAC's own website, which admits that SAC employs the use of "Robo or Auto Dialers" to make calls. Compl. at ¶ 21; Exh. "A." ("In fact, SAC admitted on its own webpage that it uses 'auto dialers' to place calls to consumers…admitting that SAC sends 'periodic notification and or messages by email, SMS/Text, Robo or Auto Dialer Calls.").

These allegations are not the type of "bald assertions" found in *Weaver v. Wells Fargo Bank, N.A.,* 2015 WL 4730572 at *3 (M.D. Fla. 2015). In *Weaver* the plaintiff's ATDS allegation consisted of a scant nine words: "calls were made using an automated telephone dialing system…" *Weaver,* 2015 WL 4730572 at *1. The Court found the plaintiff had failed "to explain the circumstances that suggest defendant used an [ATDS]." *Weaver,* 2015 WL 4730572 at *4. To survive a motion to dismiss, the *Weaver* court held, a plaintiff could detail whether there was a pause upon his answering the call [which is exactly what Plaintiff Tarkoff has alleged here]…or any other fact that would support his conclusory allegation that he received calls from an automatic telephone dialing system." *Id.* citing *Padilla v. Whetstone Partners, LLC,* 2014 WL 3418490, at *2 (S.D. Fla. July 14, 2014). Tarkoff has done just that.

Tarkoff has alleged that SAC's calls were accompanied by a "prolonged delay" readily observed in the answering service recording, leading Tarkoff to believe that automated equipment was involved in the call. This fact, combined with Tarkoff's review of the SAC website and its frank admission that SAC employs "Robo or Auto Dialers" to make calls, provides a plausible inference that the calls at issue were made using an ATDS. *See e.g. Connelly v. Hilton Grant Vacations Co., LLC,* 2012 WL 2129364, at *4 (S.D.Cal. June 11, 2012) (Sammartino, J.) ("Plaintiffs allege that '[t]he calls

had a delay prior to a live person speaking to Plaintiffs …resulting in silence on the other end of the phone), indicating that [the defendant] placed the calls using an automatic telephone dialing system.").

SAC's motion to dismiss ignores Tarkoff's allegations of a "click and pause" delay and the case law holding this type of allegation sufficient to overcome a Rule 12(b)(6) challenge.   Moreover, SAC does not address how – in light of SAC's admission that it employs an ATDS – Tarkoff's inference regarding the use of an ATDS in his case is implausible.  Instead, SAC claims Tarkoff did not provide sufficient factual allegations regarding (a) the "dates of the calls", (b) "the number of times the calls occurred", (c) "how often the calls occurred", or (d) "how many voicemails were left."  Motion at 6.  Yet, SAC cites to no case which holds that any of these three "circumstances" has any direct bearing on whether an ATDS was used.[1]  And SAC's argument is factually incorrect. As SAC itself recognizes, Tarkoff does indeed specify the dates of at least two calls, and states that his own investigation would reveal multiple other calls from SAC's ATDS. Compl. at ¶ 13 ("Tarkoff's phone records indicate that on August 4, 2015 and again on August 14, 2015 the 9480 Number received phone calls from the SAC Auto Dialer. Tarkoff's investigation is continuing, and upon information and belief, Tarkoff alleges that the 9480 Number received multiple other calls from the SAC Auto Dialer beginning on or about June, 2015.").

Were the Court to adopt Plaintiff's proposed heightened Rule 8 standard, nothing short of alleging the make and model of the calling equipment used would suffice to sustain a claim. That information, which is in the exclusive possession of SAC, will be forthcoming in discovery. At this procedural stage, however, dismissal should be denied because Tarkoff has alleged facts about the circumstances surrounding the calls and voicemails sufficient to create a plausible inference that

---

[1] We treat "number of times the calls occurred" and "how often the calls occurred" as logically one and the same, so that while SAC lists four types of circumstances surrounding each call that it claims must be alleged, there are really three.  As case law and logic make clear, none actually matter for purposes of establishing whether an ATDS was used.

each were made using an ATDS.  *Weaver,* 2015 WL 4730572 at *4.  Accordingly, SAC's argument

fails and its Motion should be denied.

> **b.  Plaintiff is not Required to Alleged that He was Charged for Defendant's Calls in Order to State a Claim under the TCPA.**

At the outset, it is beyond peradventure that Tarkoff is the registered user of the 9480

Number.  *See* Complaint at ¶ 10 ("Tarkoff has been assigned a cellular telephone number ending in

9480…by his cellular telephone provider.").[2]

And SAC's argument that Tarkoff was required to, but did not, allege he was charged for the

telephone calls he received is meritless.  Put simply, "the TCPA does not require the plaintiff to be

'charged for' the calls in order to have standing to sue."  *Manno v. Healthcare Revenue Recovery Grp.,* 289

F.R.D. 674, 683 (S.D. Fla. 2013); *see also Sacci v. Care One, LLC,* No. 14-cv-00698, 2015 WL 3966034,

at *5 (D.N.J. June 30, 2015) ("The called party has standing to bring suit against a person or entity

that violates the TCPA, even if the called party has suffered no actual harm.") (citing 47 U.S.C.

§227(b)(1)(B); *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.,* No. 08-cv-481, 2009 WL 602019 at *3

(W.D. Wis. Mar. 9, 2009).

---

[2] SAC faults Tarkoff for failing to allege "ownership" over the telephone number at issue.  That position is based on a complete lack of understanding of telecommunications law.  FCC regulations do not give subscribers any property rights in their phone numbers.  *See generally* Susan Eisenberg, *Intangible Takings,* 60 Vand. L. Rev. 667, 676 (2007).  Instead, cellular telephone service subscribers have a contractual right to *use* a given telephone number, flowing from the registration agreement with their respective telecommunications carrier.  In other words, the most an individual like Tarkoff can allege is that he has been "assigned" a telephone number by a cellular telephone service provider.  That is exactly what Tarkoff has alleged here.  *See* Complaint at ¶ 10.  Even assuming "ownership" was the relevant inquiry, SAC's argument is misplaced inasmuch as Tarkoff need not *own* the cellular telephone or phone number where the accused calls were received as long as Tarkoff was the "called party."  47 U.S.C. §227(b)(1)(A)(iii).  Indeed, Tarkoff need not even allege his phone number to survive a motion to dismiss.  *Leon v. Target Corp.,* No. 15-cv- 01, 2015 WL 1275918, at *3 (M.D. Pa. Mar. 19, 2015) (finding that a plaintiff need not allege his telephone number to state a claim under the TCPA).

SAC's position, raised and soundly rejected in other cases, stems from a tortured construction of the provision in the TCPA that makes it unlawful to place calls using an autodialer to:

> any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, *or any service for which the called party is charged for the call*…"

47 U.S.C. § 227 (b)(1)(A)(iii) (emphasis added).   SAC's focus on the last part of this provision is misplaced.  The highlighted phrase refers to a wholly separate service and is not meant to modify the services listed before it (*i.e.,* telephone numbers assigned to a "a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service.")  *See Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1257 (11th Cir. 2014). "[T]he rule of the last antecedent requires the phrase 'for which the called party is charged for the call'… to be applied to the words or phrase immediately precedent…and…not to be construed as extending to or including others more remote…namely, 'paging,' 'cellular telephone,' or 'mobile radio' services." *Id.*  (internal quotations and citations omitted).

Thus, the phrase "for which the called party is charged for the call" applies *only* to the last antecedent "any service" and does not modify the other listed services included in the clause. *Id.*; *see also Moore v. Dish Network L.L.C.,* 57 F. Supp. 3d 639, 647 (N.D.W. Va. 2014) (using the "rule of last antecedent" to find that the phrase "charged for the call" applies only to the phrase "any service") (collecting cases).  Indeed, if the phrase "any service for which the called party is charged for the call" is read to require that a called party using a "paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service" must be charged per call, then the listing of these services would be superfluous. *See, e.g., Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute.") (quotation marks omitted); *Wash. Mkt. Co. v. Hoffman,* 101 U.S. 112, 115–16, (1879) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented,

no clause, sentence, or word shall be superfluous, void, or insignificant.") (quotation marks omitted); *In re Rothstein, Rosenfeldt, Adler, P.A.,* 717 F.3d 1205, 1214 (11th Cir.2013) (referencing "the time-honored canon of construction that we should disfavor interpretations of statutes that render language superfluous") (quotation marks omitted).

In other words, as the Eleventh Circuit has already held, the term "any service" cannot be read to include the prior services listed, including a cellular telephone service. *Osorio*, 746 F.3d at 1258.

Accordingly, neither 47 U.S.C. § 227(b)(1)(A)(iii) nor 47 U.S.C. § 227(b)(2)(C) require that individuals be charged for unsolicited calls placed to their cellular phones.

### c. Plaintiff's Allegations Regarding the Number of Potential Class Members at Issue is Sufficient at this Stage of the Litigation.

SAC next argues that Tarkoff's claim should be dismissed pursuant to Rule 12(b)(6) because his allegation regarding the number of putative class members at issue is "unsupported by fact and…too conclusory to be true." (Def. Mot. at 6.). That argument also fails.

As an initial matter, there is no requirement that a representative plaintiff identify the exact number of putative class members even at the class certification stage, let alone at the pleadings stage of the litigation. *See United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 882 (11th Cir. 2003) (On a motion for class certification: "It is not necessary ... that class members be specifically identified; the plaintiff need not name names. In addition, the complaint need not set forth the exact number of class members. It is sufficient to indicate the approximate size of the class and provide or describe facts making ultimate identification of class members possible when that identification becomes necessary."); *See Moore v. Walter Coke, Inc.*, 294 F.R.D. 620, 631 (N.D. Ala. 2013) (finding proper a class definition that included all residents in a two-mile radius from a hazardous materials processing plant).

Instead, a plaintiff must simply provide an estimate of the class size, and courts may then use common sense to determine whether that estimate supports a finding that joinder is impracticable.

*Evans v. United States Pipe and Foundry*, 696 F.2d 925, 930 (11th Cir.1983); *Sandlin v. Shapiro & Fishman*, 168 F.R.D. 662, 666 (M.D. Fla. 1996). This is especially true at the pleadings stage, as the parties have not engaged in discovery and the plaintiffs' allegations are based largely on their own investigations. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011) (holding a district court's ruling on class certification was "premature" at the motion to dismiss stage because courts must conduct a rigorous analysis to determine the propriety of class certification, which requires discovery); *Mills v. Serv. First Credit Union*, No. 11-cv-686, 2011 WL 3236313, at *1 (M.D. Pa. July 28, 2011) (denying motion to dismiss regarding certification issues "solely on the basis of the pleadings" when parties had not engaged in discovery). Not surprisingly then, "determination of class certification on a motion to dismiss is premature and rare...." *Humphreys v. Budget Rent a Car Sys. Inc.*, No. 10-cv-1302, 2014 WL 1608391, at *11 (E.D. Pa. Apr. 22, 2014).

Here Tarkoff is not "merely guessing that these purported thousands of calls were all unsolicited and made without the prior express consent of the called parties using an automatic telephone dialing system." Motion at 9.  Instead, the combination of the use of an ATDS, the volume of calls received by Tarkoff, the plethora of publicly available consumer complaints regarding unwanted calls initiated by SAC, as well as pending Attorney General investigations in Minnesota and Florida, inform the allegations set forth in the Complaint. *See e.g. Swiggett v. Watson*, 441 F.Supp. 254, 256 (D.Del.1977) (finding that the numerosity requirement was satisfied since printed forms were used).

For these reasons and at this stage of the proceedings, Plaintiff's allegations regarding the potential size of the class are more than satisfactory and certainly do not require dismissal.

## 2.  The Class Alleged is Sufficiently Ascertainable

SAC contends Tarkoff has failed to plead an ascertainable class.  The threshold issue of "ascertainability," relates to whether the putative class can be identified. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. *685*

*Greyhound Park, Inc.,* 562 Fed.Appx. 782, 787 (11th Cir. 2014) (citing *Fogarazzo v. Lehman Bros., Inc.,* 263 F.R.D. 90, 97 (S.D.N.Y.2009)). Conversely, unsuccessful class definitions depend on "subjective standards…or terms that depend on resolution of the merits (*e.g.,* persons who were discriminated against)." Manual For Complex Litigation (Fourth) § 21.222 (2004).

In other words "it must be administratively feasible for the court to determine whether a particular individual is a member." *Bush v. Calloway Consol. Group River City, Inc.,* No. 10–CV–841–J– 37MCR, 2012 WL 1016871, at *4 (M.D. Fla. Mar. 26, 2012).  "Administrative feasibility" means that identifying class members is a manageable process that does not require much, if any, individual inquiry. *Randolph v. J.M. Smucker Co.,* 303 F.R.D. 679, 687 (S.D. Fla. 2014).

This analysis is best resolved at the class certification stage of the proceedings.  *See Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012).  But even if the court considers it at the motion to dismiss stage, the class is sufficiently ascertainable under Tarkoff's definition, which is as follows:

> "All persons within the United States who received a non-emergency telephone call from SAC, and/or affiliates, subsidiaries, or agents of SAC to a cellular telephone through the use of an automated dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such telephone call(s)."

Compl. at ¶ 30.

Clearly, the information for ascertaining this class is in SAC's possession, as the Complaint alleges.  SAC's records will demonstrate which numbers on its outgoing call list provided the requisite express written consent to be called and which ones did not.

### 3.  SAC's Request for a More Definite Statement Should Be Denied.

Finally, SAC argues that if the Court denies its motion to dismiss, it should at least require Tarkoff to provide a more definite statement.  SAC argues that the Complaint contains mere "threadbare allegations and a class definition that renders the class unascertainable" which renders

the Complaint "so vague and ambiguous that SAC cannot reasonably prepare a response." (Motion at 12.)  This argument also fails.

Most courts disfavor the use of Rule 12(e) because it is often used to delay the proceedings. *See e.g. Royal Shell Vacations, Inc. v. Scheyndel*, 233 F.R.D. 629, 630 (M.D. Fla. 2005).  As other courts have explained, "the [Rule] 12(e) motion is prone for implementation of barristerial shadow boxing, [and] its exercise should be cast in the most of *strictest necessity.*" *Lincoln Laboratories, Inc. v. Savage Laboratories, Inc.,* 26 F.R.D. 141, 142 (D. Del. 1960) (emphasis added).

Accordingly, motions for a more definite statement are generally viewed with disfavor, particularly where the information sought by the motion could easily be obtained by discovery. *See Bazal v. Belford Trucking Company,* 442 F.Supp. 1089 (S.D.Fla. 1977); *Scarfato v. Nat'l Cash Register Corp.,* 830 F. Supp. 1441, 1443 (M.D. Fla. 1993) (noting that motions for more definite statement are disfavored in light of the liberal discovery practices);  *Gross v. Weinstein, Weinburg & Fox LLC,* --- F. Supp. 3d ----, 2015 WL 5012309, at *4 (D. Del. Aug. 24, 2015); *Mielo v. Aurora Huts, LLC,* No. 14-cv-1162, 2015 WL 106631, at *6 (W.D. Pa. Jan. 7, 2015) (recognizing that motions for a more definite statement are "highly disfavored.") (quotations and citations omitted).

This case is far from one where the "pleading … is so vague or ambiguous that the party cannot reasonably prepare a response." *Abrams v. CIBA Specialty Chems. Corp.*, No. 08-0068-WS-B, 2008 WL 4183344, at *2 (S.D. Ala. Sept. 10, 2008) ("As the formidable standard set forth in Rule 12(e) suggests, motions for more definite statement are viewed with disfavor and are rarely granted.") (internal citations omitted); *Mielo v. Aurora Huts, LLC*, No. 14-CV-1162, 2015 WL 106631 at *6 (W.D. Pa. Jan. 7, 2015 (recognizing that, "[a] motion for a more definite statement is used to provide a remedy for an unintelligible pleading rather than as a correction for lack of detail.") (internal citations omitted).

Here Tarkoff's allegations are clear and unambiguous.

Tarkoff has alleged his phone number.  Compl. at ¶ 10.  Likewise, Tarkoff alleged the timeframe in which he began receiving calls from SAC, the source number of the calls received, and the date and time of calls and voicemails stored on his cellular telephone.  Compl. at ¶ 11-13. Tarkoff likewise detailed how every voicemail included the same sales pitch and follow on instructions, and that they all detailed that individuals were eligible for loan consolidation and/or forgiveness. (*Id.* ¶¶ 14-15.) Defendant is sufficiently on notice of the illegal activity so as to conduct its own internal investigation, and adequately respond to the allegations in the Complaint. Yet despite taking issue with the lack of detail in the complaint, SAC provides no suggestions on which allegations should be more definite.

It is not surprising that other courts have rejected nearly identical arguments to those raised by Defendant here. *See, e.g., Panacci v. A1 Solar Power, Inc.*, No. 15-cv-532, 2015 WL 3750112, at *3, 9 (N.D. Cal. June 15, 2015) (denying motion for a more definite statement in a TCPA action when the "Defendants' Motion [was] not a true challenge to the intelligibility of the Complaint—because the Complaint [was] not intelligible—but rather, Defendants' Motion [was] a request for details that are plainly obtainable through discovery.") Here, no more detail is necessary and SAC's motion should be denied in this regard as well. *See Robbins v. Coca-Cola-Company*, No. 13-cv- 132, 2013 WL 2252646, at *4 (S.D. Cal. May 22, 2013) (denying motion for a more definite statement in a TCPA action because the "Defendant's present, cogent motion to dismiss belies any suggestion that the complaint is too vague for Defendant to frame a response.") (citation omitted).

## III.    CONCLUSION

For the foregoing reasons, Tarkoff respectfully requests that the Court enter an Order denying SAC's Motion to Dismiss or in the Alternative for a More Definite Statement, require SAC to answer Tarkoff's Complaint within 10 days, and award such other and further relief as the Court deems reasonable and just.

Dated:  November 23, 2015

Respectfully submitted,

By: */s/  David P. Milian*

**CAREY RODRIGUEZ
MILIAN GONYA, LLP**

**David P. Milian, Esq.**
Florida Bar No. 844421
dmilian@careyrodriguez.com
**Ernesto M. Rubi, Esq.**
Florida Bar No. 92014
erubi@careyrodriguez.com
**Frank S. Hedin, Esq.**
Florida Bar No. 109698
fhedin@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile:  (305) 372-7475

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of November, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) on all counsel of record identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

## SERVICE LIST

**Gustavo Daniel Lage, Esq.**
Sanchez-Medina, Gonzalez, Quesada, Lage, Crespo, et al.
201 Alhambra Circle
Suite 1205
Coral Gables, FL 33134
305-377-1000
Fax: 305-424-0237
Email: glage@smgqlaw.com

*Counsel for Defendant*

By: */s/ Ernesto M. Rubi*
Ernesto M. Rubi, Esq.